# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2011

No. 10-40658
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DAVID JHONATAN TORRES-AVALOS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:08-CR-1619-1

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

David Jhonatan Torres-Avalos (Torres) pleaded guilty to being an illegal
alien in possession of a firearm. *See* 18 U.S.C. §§ 922(g), 924(a)(2). He was
sentenced to 78 months of imprisonment. He argues that the district court erred
in applying the cross-referencing provision in U.S.S.G. § 2K2.1(c) based on his
possession of a firearm "in connection with" a drug trafficking offense.

Police officers observed Torres purchase six tubes of grease and transport
them to a house. One of the officers knew from experience and training that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

large amount and type of grease was consistent with activity associated with the packaging of drugs for shipment. The officers followed Torres to the house, where he stayed for approximately one hour. When Torres left the house, the officers stopped him for a traffic violation. Torres could not provide identification and gave a false name and date of birth. When the officers asked Torres what he had been doing immediately before they stopped him, he gave answers inconsistent with the activity the officers had witnessed. Upon request, Torres gave the officers consent to search his vehicle and agreed to guide them back to the aforementioned house. During a pat-down search of Torres, the officers found a Kel Tec .380 caliber pistol in his boot; the firearm was loaded with six rounds of ammunition.

Upon return to the house, the owner, Heriberto Hernandez, gave the officers consent to search. Once inside, the officers found that it was a one-room, uninhabitable building. Inside of compartments in two tractor-trailers parked behind the house, the officers found approximately 25 kilograms of cocaine; they also found on the property a Ruger .45 caliber revolver. The officers took Hernandez into custody. Fingerprints revealed Torres's identity as David Torres, an alien who had been previously deported on September 25, 2007. Torres admitted that he was in the United States illegally and that he had previously been removed. Torres said he acquired the Kel Tech pistol from a woman at a gun show and that he did not fill out any forms in connection with the purchase. Torres explained that he purchased the weapon for personal protection.

In calculating Torres's guidelines sentencing range, the probation officer used the cross referencing provision in § 2K2.1(c)(1)(A), which directs the use of § 2X1.1. The use of the cross-referencing provision significantly increased Torres's base offense level. He challenges the use of the cross-referencing provision, arguing that the "functional nexus" required by § 2K2.1(c) is lacking because the Kel Tec in his boot "was at least as attenuated functionally as it was

physically from the drugs in the hidden compartments in the tractor-trailers." *United States v. Mitchell*, 166 F.3d 748 (5th Cir. 1999). According to Torres, the Government did not prove that he had anything to do with the tractor-trailers, and there was no evidence that grease was used to hide or disguise any of the drugs in the tractor-trailers.

Viewing the evidence as a whole, we are not persuaded that the district court erred in applying the cross-reference provision. Torres, who was found to be carrying a loaded firearm in his boot, purchased items that are consistent with the packaging and shipment of drugs, delivered the items to an uninhabitable house (stash house) where 25 kilograms of cocaine were concealed nearby, spent an hour in the structure, and then, when questioned about his activities, made statements that were inconsistent with what the officers had witnessed. His inconsistent statements are inherently suspicious and may be "the strongest evidence" of his guilty knowledge. *See United States v. Diaz-Carreon*, 915 F.2d 951, 954-55 (5th Cir. 1990). His possession of the pistol while in the house was not too geographically, spatially, functionally, or logically remote from his constructive possession of cocaine with the intent to distribute it. *See Mitchell*, 166 F.3d at 753-56. On the contrary, the pistol "facilitated, or had the potential of facilitating . . . another offense," (i.e., possession with intent to distribute cocaine). § 2K2.1 cmt. n.14(A) (2008); *see United States v. Jeffries*, 587 F.3d 690, 692-93 (5th Cir. 2009). Finally, it is not plausible that the owner of the 25 kilograms of cocaine would ask Torres to deliver grease to the stash house or to work on the tractor-trailers if Torres was not a part of the conspiracy to possess with the intent to distribute the large and valuable load of cocaine.

AFFIRMED.