# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2025

Lyle W. Cayce
Clerk

No. 24-30192

United States of America,

*Plaintiff—Appellee*,

*versus*

Tedric Deshun Ratcliff,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CR-226-2

Before Graves, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Tedric Deshun Ratcliff appeals his sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B), arguing that there is insufficient factual support to show that his possession of a firearm facilitated his possession of a stolen vehicle. In the light of this court's recent decision in *United States v. Henry*, 119 F.4th 429 (5th Cir. 2024), we agree, vacate his sentence, and remand for resentencing.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30192

## I.

In September 2022, the Shreveport Police Department responded to a call about a sighting of multiple armed individuals in an apartment complex. When the officers arrived, they found Tonique Sellers carrying a rifle as he entered the rear driver's side of a Jeep. The officers surrounded the vehicle and ordered Sellers to exit. As Sellers complied, the officers saw the rifle on the floorboard under where Sellers had been seated.

The officers also ordered Defendant Tedric Ratcliff, who was in the driver's seat, to exit the Jeep and sit in the patrol car. As Ratcliff entered the patrol car, the officers saw Ratcliff remove a "Glock Switch"[1] from his pocket and drop it. As the officers searched the Jeep, they found three more pistols: one underneath the driver's seat, another in the passenger seat pocket, and a third with a Glock Switch on the front passenger floorboard, underneath a backpack. Two of the pistols had been reported stolen months earlier. The officers also found a variety of firearm magazines and ammunition. The officers also discovered that in August 2022 the Jeep had been reported stolen in Carrollton, Texas.

Ratcliff initially told the officers that he was "just sitting" in the Jeep after finding its key on a nearby bench. But when asked during booking how fast he had driven the Jeep, Ratcliff responded, "It got 180 on the dash. Let me just say this, y'all lucky y'all got us how y'all did 'cause otherwise y'all [would have] had to catch me in the wind."

Ratcliff pled guilty to possession of a machinegun in violation of 18 U.S.C. § 922(o). In the initial presentence investigation report (PSR), the

---

[1] According to the presentence investigation report, a Glock Switch is "a conversion device that allows a pistol to function in the manner of an automatic weapon by enabling it to shoot more than one shot . . . by single function of the trigger."

probation officer analyzed, but did not apply, an offense-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B). That Guideline imposes a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The probation officer concluded there was a "lack of strong evidence to establish that Ratcliff possessed the firearms to facilitate his illegal possession of the stolen vehicle." Two subsequent revisions to the PSR maintained this conclusion.

But in a third revised PSR, the probation officer reversed course and recommended the four-level increase, stating: "During a search of the Jeep, officers recovered a total of four firearms including the firearm possessed by Ratcliff . . . . A record check revealed that the Jeep was reported stolen. . . . Therefore, a [four-level] increase is warranted." A fifth version of the PSR, the operative one, was issued in January 2024 and contained the same recommendation for the four-level increase. Ratcliff objected, arguing that there was no evidence "to establish [his] possession of a firearm facilitated his alleged possession of a stolen vehicle." In an addendum to the PSR, the probation officer responded that "in possessing the firearms, Ratcliff had the potential for facilitating his illegal possession of the stolen vehicle," and that it was reasonable to conclude that "Ratcliff's possession of the firearms bolstered his illegal possession of the stolen vehicle."

At the sentencing hearing, the district court adopted the factual findings in the final PSR and overruled Ratcliff's objection to the § 2K2.1(b)(6)(B) offense-level increase. The district court found that Ratcliff "had the potential for facilitating his illegal possession of the stolen vehicle by the fact of having the firearms on board with him in a stolen vehicle." Adopting the four-level increase, the district court sentenced

Ratcliff to 57 months of imprisonment and three years of supervised release. Ratcliff appealed, challenging the district court's application of § 2K2.1(b)(6)(B).

## II.

"A district court's determination that a firearm was used or possessed in connection with another felony offense for purposes of U.S.S.G. § 2K2.1(b)(6)(B) is a factual finding that is reviewed for clear error." *United States v. Bass*, 996 F.3d 729, 742 (5th Cir. 2021). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). A sentencing court may adopt the findings of a PSR without additional inquiry "if those facts have an evidentiary basis with a sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information is materially unreliable." *United States v. Valles*, 484 F.3d 745, 759 (5th Cir. 2007).

## III.

Section 2K2.1(b)(6)(B) imposes a four-level increase to the defendant's offense level if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The corresponding application note to § 2K2.1(b)(6)(B) explains that the offense-level increase applies if "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A). "Thus, to obtain an enhancement under § 2K2.1(b)(6), the Government must establish by a preponderance of evidence that the firearm 'facilitated, or had the potential of facilitating' another felony offense and that the defendant used or possessed the firearm in connection with that offense." *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010) (internal

quotation marks omitted) (quoting *United States v. Anderson*, 559 F.3d 348, 357 (5th Cir. 2009)).

The district court determined, tracking the final PSR, that the enhancement was warranted because "[Ratcliff] had the potential for facilitating his illegal possession of the stolen vehicle by the fact of having the firearms on board with him in a stolen vehicle." The court concluded that "[Ratcliff's] possession of the firearms bolstered his illegal possession of the stolen vehicle." The district court's application of § 2K2.1(b)(6)(B) rests on two findings:  that Ratcliff (1) knowingly possessed a stolen vehicle and (2) used or possessed a firearm "in connection with" his possession of the vehicle.

The first finding is "plausible in light of the record as a whole." *Zuniga*, 720 F.3d at 590. Ratcliff was found sitting in the driver's seat of the stolen vehicle, and he later suggested to an officer that the vehicle had reached 180 miles per hour—indicating that he had both possessed, and driven, the vehicle prior to his being apprehended in this case.

The second finding presents a harder question. While the appeal in this case was pending, this court handed down *Henry*, which also involved the application of § 2K2.1(b)(6)(B) in the context of possession of a firearm and a stolen vehicle. *Henry*, 119 F.4th at 431. In *Henry*, the police observed the defendant entering a stolen car in the parking lot of a shopping center. *Id.* When confronted, the defendant exited the vehicle and fled on foot. *Id.* As he fled, he threw a concealed pistol that he had been carrying to the ground. *Id.* The district court applied § 2K2.1(b)(6)(B) to enhance the defendant's offense level. *Id.* at 432. But, following the principles of *United States v. Jeffries*, 587 F.3d 690, 696 (5th Cir. 2009), this court vacated the sentence. *Henry*, 119 F.4th at 436. Though it was plausible that the defendant had knowingly possessed a stolen car "given the circumstantial evidence," the

court concluded that, other than mere proximity, there was a "lack of a finding of facilitation connecting [the defendant's] possession of the gun to his possession of the car." *Id.*

So too here. Ratcliff's mere simultaneous possession of the firearm(s) and the stolen vehicle is insufficient to satisfy § 2K2.1(b)(6)(B). *See id.* "[O]utside of the context of drug trafficking, 'no presumption is made' that a firearm facilitated possession of other contraband just because the two items are in close proximity and both are illegally possessed." *Id.* (citing *Jeffries*, 587 F.3d at 693); *cf.* U.S.S.G. § 2K2.1(b)(6), cmt. n.14(B)(ii) ("[I]n the case of a drug trafficking offense in which a firearm is found in close proximity to drugs . . . [the enhancement] is warranted."). There must be "evidence to suggest a relationship between the gun and the stolen car aside from proximity." *Henry*, 119 F.4th at 436.

The district court's finding that Ratcliff "had the potential for facilitating his illegal possession of the stolen vehicle by the fact of having the firearms on board with him in a stolen vehicle" cannot by itself justify application of the enhancement. The court's conclusion that "[Ratcliff's] possession of the firearms bolstered his illegal possession of the stolen vehicle" appears to rest on mere proximity of firearms and vehicle, which both *Henry* and *Jeffries* instruct is insufficient. The district court did not explain, based on evidence, "how the firearm[s] plausibly facilitated the possession of the [stolen car]." *Id.*

The only justification for the four-level increase given in the operative PSR, which the district court adopted, was that "[d]uring a search of the Jeep, officers recovered a total of four firearms . . . [and] [a] record check revealed that the Jeep was stolen." True enough, but it is neither here nor there on the critical question of how the firearms Ratcliff possessed were connected to his possession of the stolen Jeep. And the probation officer's addendum

response to Ratcliff's objection to the enhancement—that "Ratcliff had the potential for facilitating his illegal possession of the stolen vehicle" by possessing firearms—is a conclusory statement devoid of supporting facts. Neither is enough to apply § 2K2.1(b)(6)(B). *See id.*

On the record before us, no evidence shows that any of the recovered firearms were used when the vehicle was initially stolen. And other than proximity, the district court did not address whether Ratcliff used the firearms to maintain possession of the vehicle. *Cf. Jeffries*, 587 F.3d at 693 (requiring evidence that the defendant had a "reason to protect the body armor" beyond mere proximity of the firearm and the body armor). Though the Government relies on the initial call about multiple, visibly-armed individuals in the complex to suggest that Ratcliff needed the firearms to maintain his possession of the Jeep, the only individuals with firearms identified in the PSR *were Ratcliff and his companions. Cf. Henry*, 119 F.4th at 429 (quoting *United States v. Pimpton*, 589 F. App'x 692, 696 (5th Cir. 2014)) (noting lack of evidence that defendant "planned to use his firearm to protect the [vehicle]"). As noted in the initial PSR, and carried forward in the probation officer's addendum response to Ratcliff's objection, there was a "lack of strong evidence to definitively establish that Ratcliff possessed the firearms to facilitate his illegal possession of the stolen vehicle." Without evidence that Ratcliff used or possessed a firearm to facilitate his possession of the stolen vehicle, the offense-level increase under § 2K2.1(b)(6)(B) is not sustainable in view of *Jeffries* and *Henry*.

Accordingly, we vacate Ratcliff's sentence and remand for resentencing. On remand, the district court may reconsider its application of § 2K2.1(b)(6)(B) with the benefit of *Henry* and consistent with this opinion.

VACATED AND REMANDED.